IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| DATAMOTION TEXAS, LLC,<br><br>          Plaintiff,<br><br>v.<br><br>COMERICA BANK, COMERICA INCORPORATED, and COMERICA BANK & TRUST, N.A.<br><br>          Defendants. | Civil Action No. 2:15-cv-00894-JRG<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANTS COMERICA BANK, COMERICA INCORPORATED,
AND COMERICA BANK & TRUST, N.A.'S
<u>MOTION TO TRANSFER VENUE</u>**

Defendants Comerica Bank, Comerica Incorporated, and Comerica Bank & Trust, N.A. (collectively "Comerica"), by and through their attorneys, respectfully move to transfer venue to the United States District Court for the Northern District of Texas, Dallas Division ("NDTX") pursuant to 28 U.S.C. § 1404(a).

I.    FACTUAL AND PROCEDURAL BACKGROUND

This case involves a plaintiff that has the most minimal contact with the State of Texas and no contacts with the Eastern District of Texas, and Defendants that have extremely remote, minimal contacts with the Eastern District of Texas, but do have more substantial contact with the Northern District of Texas. The vast majority of the evidence in the case is in the possession, custody, and control of a non-party. Key evidence is in the possession, custody, and control of Zix Corporation ("Zix"), at its Dallas, Texas headquarters. Key witnesses are Zix's Dallas-based employees. All of the other third-party documents and witnesses are in New Jersey and other East Coast cities.

DataMotion, Texas LLC's only connection with the State of Texas is that as of April 16, 2015 it has a registered agent in Austin, Texas, in the Western District of Texas.[1] It does not appear to have an office or even a mail drop, employees, or telephone, in the State of Texas or anywhere else. DataMotion Texas, LLC, is a wholly owned subsidiary of DataMotion, Inc., a New Jersey corporation with its principal place of business in Florham Park, New Jersey.[2] On May 26, 2015, DataMotion, Inc. assigned U.S. Patent No. 6,684,248 ("the '248 patent"), entitled "Method of Transferring Data from a Sender to a Recipient During which a Unique Account for the Recipient is Automatically Created if the Account Does Not Previously Exist," and U.S.

---

[1] Plaintiff's Response in Opposition to Defendant Kaiser's Motion to Transfer Venue, *DataMotion Texas, LLC v. Kaiser Permanente Ventures, LLC, et al.*, 2:15-cv-00893-JRG (E.D.T.X. Sept. 25, 2015), ECF No. 25, at 3. [hereinafter *Plaintiff's Response*]; *see also* Exh. F, Texas Office of the Comptroller.
[2] *See Plaintiff's Response*, at 3.

1

Patent No. 8,447,967 ("the '967 patent"), entitled "Controlled Message Distribution" (collectively, "patents-in-suit") to DataMotion Texas, LLC.[3] Two days after acquiring the '248 and '967 patents, DataMotion Texas, LLC initiated this action, asserting the two patents. It similarly filed seven other actions in this Court. The '248 and '967 patents were prosecuted by firms that only have offices in New Jersey and the nearby East Coast states.[4] Both named inventors of the '248 and '967 patents, Robert Janacek and Mahesh Muchhala, live and work in New Jersey at DataMotion, Inc. *Plaintiff's Response*, at 3.

Comerica Bank has its principal place of business in Dallas, Texas. The majority of its 9,059 person workforce is in Michigan, but 1,912 of those personnel work in Texas.[5] The majority of Comerica's employees in Texas, about 1,074, work in the Dallas area[6] Comerica is not aware of any pertinent employee working within the EDTX or within 100 miles of this Court. *Id.* Likewise, Comerica does not have offices or documents in the EDTX that would contain information that would be pertinent to this litigation. Exh. G, Vowels Declaration, ¶¶ 7, 9. Comerica had no role in the design, implementation, or operation of the allegedly infringing feature of its secure email system that pertains to the '248 patent. *Id.* at ¶ 5. That feature was provided by a Dallas-based third-party supplier, Zix. *Id.* at ¶¶ 4, 5. The '248 patent relates to a

---

[3] USPTO Assignment Record 36005-389 (May 26, 2015). The USPTO database reflects that the patents-in-suit are the only two recorded patent assignments to DataMotion Texas, LLC. Ex. J, USPTO Assignment Record Database, Search for assignments naming DataMotion Texas, LLC assignee or assignor.

[4] *See Plaintiff's Response*, at 3. *See also* Exh. A, Gibbons Law, *Office Locations* (Sept. 25, 2015, 9:55 AM), http://www.gibbonslaw.com/offices/. Gibbons, Del Deo, Wolan, Griffinger, and Vecchione has two offices in New Jersey (Newark and Trenton), one in each of New York, Pennsylvania, and Delaware. *Id.*; Exh. B, Volpe and Koenig, P.C., *Contact* (Sept. 25, 2015, 10:01 AM), http://vklaw.com/contact/. Volpe and Koenig, PC has one office in Princeton, New Jersey, and one office in Philadelphia, Pennsylvania.

[5] Exh. H, Garrett Declaration, ¶ 3. Comerica Incorporated is a holding company that wholly owns Comerica Bank. *Id.* Comerica Incorporated's few employees are located in Dallas, Texas. Comerica Bank wholly owns Comerica Management Company. *Id.* Comerica Bank technically does not employee all of the 9,059 employees; but rather, virtually all of Comerica Bank's workforce are employed by Comerica Management Company and leased to Comerica Bank. *Id.*

[6] *Id.* Aside from Dallas Comerica has 566 employees in the Houston area, 99 in the San Antonio area, 98 in the Austin area, and 75 in the Fort Worth area. *Id.*

process that would occur, if at all, within the Zix Portal—a proprietary system designed and developed by Zix without participation by Comerica. *Id.* at ¶ 5. What is accused with respect to the '967 patent is a Zix product/service that is deployed into Comerica's email system. *Id.* at ¶ 8.

The Zix Portal was designed and implemented by Zix's Dallas-based development team and runs on Zix's equipment in Dallas. Exh. I, Robertson Declaration, ¶ 5. Specific Zix employees with the most knowledge of the allegedly infringing portal feature of Zix's secure email system are Dena Bauckman and David Robertson, both of whom work at Zix in Dallas, Texas and Russell Morgan, who works at Zix in Ottawa, Ontario.[7] Similarly, the client outlook plugin was designed and developed by Zix's Dallas development team. *Id.* at ¶ 8. Specific Zix employees with the most knowledge of the allegedly infringing plugin feature of Zix's secure email system are Leon Lusk, Dena Bauckman, and David Robertson, all of whom work at Zix in Dallas. *Id.* at ¶¶ 2, 9. The technical documents describing the design and implementation of the allegedly infringing portal and plugin are located in the Dallas development group's document repository. *Id.* at ¶¶ 7, 10. Those documents contain Zix's proprietary information and were not disclosed to Comerica. *Id.* at ¶ 11; Exh. G, at ¶ 7. Comerica has a few general description documents in Auburn Hills, Michigan, such as specification sheets and user and administration guides for the secure email system. Exh. G, at ¶¶ 6, 7, 9.

Zix Corporation's principal place of business is in Dallas, Texas. Exh. I, at ¶ 2. Among other products, Zix offers email encryption solutions. *Id.* Zix designed and implemented the secure email system featuring the allegedly infringing portal and plugin used by Comerica. *Id.* at

---

[7] *Id.* at ¶¶ 2, 6. Also, there are other members of Zix's Dallas development team that have pertinent information regarding the allegedly infringing features' design, implementation, and operation. *Id.*

3

¶¶ 4, 5, 8. Zix is in possession and control of substantially all of the technical documentation that describes the allegedly infringing features' design, development, and operation. Exh. G, at ¶ 7; Exh. I, at ¶ 11. Likewise, it is Zix employees who possess the technical knowledge related to the allegedly infringing features' design, implementation, and operation. Exh. I, at ¶¶ 6, 9. Zix does not make its technical, proprietary information available to its users. *Id.* at ¶ 11; Exh. G, at ¶ 7. Therefore, because most of the technical documentation and witnesses are located in Zix's headquarters, Dallas is the center of gravity of this case.

This case is just beginning. DataMotion Texas, LLC filed its Complaint in this Court on May 28, 2015 naming Comerica Bank, Comerica Incorporated, and Comerica Bank & Trust, N.A., as Defendants. ECF No. 1. This Court's Order on August 31, 2015 consolidated this case with DataMotion Texas, LLC's seven other cases currently pending in the EDTX.[8] In each of the consolidated cases, DataMotion Texas, LLC alleges infringement of either or both of the patents-in-suit. This Court held a scheduling conference for the consolidated cases on September 30, 2015. Comerica has been informed that another Zix customer, Commerce Bank, was also sued by Defendants in the EDTX and has or will be moving to transfer the case to the NDTX.

## II. ARGUMENT

Comerica respectfully requests that this Court grant its Motion to Transfer Venue because it would clearly be more convenient to litigate this case in the Northern District of Texas. At issue is the Zix secure email system and its features. Zix, a non-party to this action, is located in Dallas, Texas. Most of the technical documentation and witnesses for this case are with Zix in

---

[8] ECF No. 20. The group of consolidated cases is as follows: (1) *Automatic Data Processing, LLC et al.*, No. 2:15-cv-00889-JRG; (2) *American Heritage Life Insurance Company et al.*, 2:15-cv-00890; (3) *HSBC Bank USA, N.A.*, 2:15-cv-00891-JRG; (4) *John Hancock Financial Corporation et al.*, 2:15-cv-00892-JRG; (5) *Kaiser Permanente Ventures, LLC*, 2:15-cv-00893-JRG; (6) *Comerica Bank et al.*, 2:15-cv-00894-JRG; (7) *Commerce Bancshare, Inc. et al.*, 2:15-cv-00895-JRG; (8) *Hewlett-Packard Company D/B/A Hewlett Packard D/B/A HP D/B/A HP Security Voltage et al.*, 2:15-cv-00918-JRG.

Dallas. All of the other potential third-party witnesses are located out of the State of Texas. Neither party to this suit has a meaningful connection to the Eastern District of Texas. Comerica Bank and Comerica Incorporated are headquartered in the Northern District. Plaintiff has a registered agent in Austin, Texas, but Plaintiff has no offices, employees, or documents located in Texas. Comerica Bank and Trust, N.A. is located in Michigan. Thus, this case has no meaningful connection with the Eastern District of Texas and should be transferred to the Northern District in Dallas, a significantly more convenient venue.

A.     Legal Standards

Title 28 of the United States Code grants this Court the discretionary power to transfer a civil action to any other district or division where the action could have been brought if the interests of convenience and justice so clearly require. 28 U.S.C. § 1404(a). Prior to making that determination, the moving party must demonstrate to the court that "the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (internal citation omitted) ("*Volkswagen I*"). Once that is shown, the court then determines whether a transfer is required in the interests of convenience of the parties, the witnesses, and justice. *See id.*; *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*"). To do so the court compares the transferor and transferee venues on eight different metrics—four private interest factors, and four public interest factors. *Id.* After the convenience analysis, the court assesses whether the balance of the factors demonstrates that the transferee venue is clearly more convenient. *Id.* The Federal Circuit stated that a trial court should grant a motion to transfer where most witnesses and evidence are closer to the transferee forum and few or no convenience factors favor the transferor forum. *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009). No single

5

factor controls, but "the location of key, non-party witnesses . . . dominates" the analysis. *Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 775 (E.D. Tex. Mar. 27, 2000).

### B.    Venue is Proper in the Northern District of Texas

The moving party has the threshold burden of demonstrating to the court that the claim could have been brought in the transferee venue. *Volkswagen I*, 371 F.3d at 203. That burden can be satisfied by establishing that the transferee venue has personal jurisdiction over the defendants and that the transferee venue is a proper venue. *Id.*; 28 U.S.C. § 1391; 28 U.S.C. § 1400(b). Comerica Bank and Comerica Incorporated are headquartered in Dallas, Texas and thus are subject to personal jurisdiction in the Northern District of Texas. Furthermore, Plaintiff's Complaint states that venue is proper in the Eastern District because:

> Defendants have purposefully availed themselves of the privileges of conducting business in this District; Defendants regularly conduct business within this District; and Plaintiff's cause of action arises directly from Defendants' business contacts and other activities in this District, including at least by virtue of Defendants' secured email systems and methods which are at least used in and/or accessible in this District.[9]

Any contacts Defendants have to the Eastern District similarly exist for the Northern District; therefore, venue is proper in the Northern District for the same reasons stated in the Complaint.

### C.    The Private Interest Factors Favor Transfer

The four private interest factors that courts typically consider in deciding whether the transferee forum is clearly a more convenient forum are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen I*, 371 F.3d at 203.

---

[9] ECF No. 1, ¶ 8 (citing 28 U.S.C. §§ 1391, 1400(b)).

6

### 1. The Relative Ease of Access To Sources of Proof Factor Favors Transfer Because Most Of the Discoverable Evidence Is In The NDTX

In this patent infringement action, virtually all of the technical documents that pertain to the issue of infringement, or lack of infringement, are in Dallas, Texas, in the Northern District of Texas, in the possession and control of a third-party, Zix. Exh. I, ¶¶ 7, 10, 11. Likewise, the key witnesses are Zix employees working at Zix's Dallas, Texas headquarters and in Ottawa, Ontario. *Id.* at ¶¶ 2, 6, 9. Specific Zix employees with the most knowledge of the allegedly infringing portal feature of Zix's secure email system are Dena Bauckman and David Robertson, both of whom work at Zix in Dallas, Texas and Russell Morgan, who works at Zix in Ottawa, Ontario. *Id.* at ¶¶ 2, 6. Specific Zix employees with the most knowledge of the allegedly infringing plugin feature of Zix's secure email system are Leon Lusk, Dena Bauckman, and David Robertson, all of whom work at Zix in Dallas, Texas.[10] It would be most convenient for these third-party witnesses to be deposed in Dallas and ultimately to testify at trial in Dallas.

Comerica is not in possession or control of the technical documents that pertain to whether or not the Zix system and its functionality actually infringe the asserted claims. Exh. G, ¶ 7. As detailed above, the allegedly infringing features of the secure email system were designed and developed by a third-party supplier, Zix Corporation. *Id.* at ¶¶ 4, 5, 8. Comerica has user and administration guides that Zix provided to it; however, those documents are a general in nature, do not discuss the logic of the secure email system, and only provide information on how to use, administer, and configure the system. *Id.* at ¶ 6. Because Zix has nearly all of the most relevant documentation, it follows then that nearly all of those whom have personal knowledge of the allegedly infringing features' functionality are employees of Zix—not

---

[10] *Id.* at ¶¶ 2, 9. Also, there are other members of Zix's Dallas development team with knowledge of the accused features' design, implementation, and operation. *Id.* at ¶¶ 6, 9.

Comerica. Thus, the bulk of the discoverable information in this case is possessed and controlled by Zix at its headquarters in Dallas, Texas. Zix is not a party to this action, nor are its employees, who are key witnesses. As such, the convenience to Zix and its employees is paramount. Marshall is over 150 miles from Zix in Dallas. Dena Bauckman lives in Irving, Texas, which is approximately 12.5 miles from the Dallas Courthouse and 165 miles from the Marshall Courthouse.[11] David Robertson lives in Richardson, Texas, which is approximately 15 miles from the Dallas Courthouse and 155 miles from the Marshall Courthouse.[12] Leon Lusk lives in McKinney, Texas, which is approximately 35 miles from the Dallas Courthouse and 165 miles from the Marshall Courthouse.[13] Thus it would be far more convenient and less disruptive to the Zix employees' personal and professional lives to testify at trial in Dallas, close to their work and homes, rather than to travel to and likely stay in a hotel in the Marshall area.

Plaintiff acknowledges that it has no relevant documents, witnesses, or other sources of proof in or near this District. In its response to Kaiser Permanente's Motion to Transfer Venue in another of the consolidated cases, Plaintiff stated that both of the inventors of the patents-in-suit work in New Jersey at DataMotion, Inc. *Plaintiff's Response*, at 3. Likewise, Plaintiff states that "all relevant documents related to" the conception and reduction to practice, assignment history, and prosecution of the patents-in-suit are in New Jersey with DataMotion, Inc. *Id.* at 3-4. Further, "all relevant documents related to" the formation of DataMotion Texas, LLC, and to the development, marketing, and sale of the purported commercial embodiment of the patents-in-suit are in New Jersey with DataMotion, Inc. *Id.* at 4. Therefore, neither Plaintiff nor

---

[11] *See* Exh. Z, Bauckman Delcaration, ¶ 2; Ex. N, GoogleMaps Irving to Dallas Courthouse; Exh. O, GoogleMaps Irving to Marshall Courthouse.
[12] *See* Exh. I, Robertson Declaration, ¶ 2; Ex. P, GoogleMaps Richardson to Dallas Courthouse; Exh. Q, GoogleMaps Richardson to Marshall Courthouse.
[13] *See* Exh. AA, Lusk Declaration, ¶ 2; Ex. R, GoogleMaps McKinney to Dallas Courthouse; Exh. S, GoogleMaps McKinney to Marshall Courthouse.

Defendants can identify a single relevant document or witness near this Court. Thus, all of the evidence for this case will necessarily have to travel here if this case is not transferred.

Dallas would be more convenient and less expensive than Marshall for all of the out-of-state witnesses identified by Plaintiff and Defendants. As it concerns any witnesses and documents from New Jersey, every commercial flight from Newark, New Jersey (closest airport to Florham Park, New Jersey) to Longview, Texas (closest airport to Marshall) has at least one stop—all at Dallas/Fort Worth International Airport. Exh. O, Taubin Declaration, ¶ 3(a). The same is true for the witnesses from Michigan and Ottawa. *Id.* On the other hand, there are daily nonstop flights from Newark, New Jersey to Dallas, Texas on at least two different airlines. *Id.* at ¶ 3(b). Likewise, there are daily nonstop flights from Detroit, Michigan (closet airport to Auburn Hills, Michigan) to Dallas, Texas on at least two different airlines. *Id.* In addition to being shorter, flights to Dallas are generally less expensive.[14] Thus, Dallas is a more convenient and less expensive forum for both parties because the bulk of the evidence is located in Dallas and all other evidence is more accessible from Dallas due to shorter, cheaper flights.

> **2.     The Availability of Compulsory Process Factor Favors Defendants Because Either This Court Does Not Have Subpoena Power Over the Zix Employees Who Work in Dallas And Live Near Dallas Or Both This Court And the NDTX Have Subpoena Power Over Them And It Would Be Far More Convenient And Less Expensive For These Non-Party Witnesses For The NDTX To Exercise Its Subpoena Power**

Under Federal Rule of Civil Procedure 45(c)(1)(B)(ii), this Court may enforce a subpoena issued to any non-party witnesses in the State of Texas to appear at trial, provided the party is not required to incur substantial expense. *Ingeniador, LLC v. Adobe Sys. Inc.*, 2014 WL 105106, at *2 (E.D. Tex. Jan. 10, 2014). Furthermore, "the location of party witnesses may

---

[14] *See* Exhs. T-Y. Those exhibits show, by examples from two consecutive days, that flights to Dallas for each of the witnesses in each of the identified areas is cheaper than flying into Longview.

9

factor into transfer analysis," but "the location of key, non-party witnesses . . . dominates" the analysis. *Mohamed*, 90 F. Supp. 2d at 775. Aside from the *availability* of compulsory process, and with respect to the key, non-party witnesses, "the *convenience* of compulsory process is also a consideration in this factor." *Ingeniador, LLC*, 2014 WL 105106, at *2.

The identified Zix employees working in Dallas comprise the majority of the key, non-party witnesses in this case for which compulsory process may be necessary.[15] Zix's employees are the critical witnesses because the primary issue in this case is whether or not Zix's secure email products infringe the '248 or '967 patent, and Comerica is not in possession or control of the best sources of proof that may show non-infringement. Thus, there are at least three key, non-party witnesses who work in Dallas over whom compulsory process may be necessary.[16] Two of the three identified Zix employees who work in Dallas, reside nearby Dallas, but within the Eastern District.[17] Although within the Eastern District, Leon Lusk's residence is about 165 miles from this Court and only about 35 miles from the Dallas Division.[18] Similarly, David Robertson's residence is about 155 miles from this Court and only about 15 miles from the Dallas Division.[19] The third Zix employee, Dena Bauckman, works in Zix's Dallas headquarters, resides in Irving, Texas within the Northern District of Texas, and is approximately 165 miles from this Court and only 12.5 miles from the Dallas Division.[20] Thus, it remains that if required to attend trial in Marshall these three non-party witnesses will have to incur the cost

---

[15] Two of the potential third-party witnesses identified by Plaintiff, the two inventors of the patents-in-suit, agreed to travel to Texas to testify in a consolidated case and presumably will do the same in the instant case, thereby making compulsory process for these witnesses unnecessary. *See Plaintiff's Response,* Declaration of Bob Janacek, ¶ 6; *Id.*, Declaration of Mahesh Muchhala, ¶ 11.
[16] *See* Exh. I, ¶¶ 2, 6, 9. In addition, there are other members of Zix's Dallas development team with knowledge of the accused features' design, implementation, and operation. *Id.* at ¶¶ 6, 9.
[17] *Compare* Exh. AA, Lusk Declaration, ¶ 2, *and* Exh. I, Robertson Declaration, ¶ 2, *with* Exh. Z, Bauckman Declaration, ¶ 2.
[18] *See supra*, note 13.
[19] *See supra*, note 12.
[20] *See supra*, note 11.

of travel, meals, and likely lodging over a several day period. Whether this Court has compulsory subpoena power over these individuals depends on whether the Court determines these are substantial or insubstantial costs. *See* FED. R. CIV. PROC. 45(c)(1). What is certain is that the Northern District of Texas has subpoena power over these key individuals, and that they would not incur significant travel and lodging expenses if subpoenaed to attend trial in Dallas.

Compulsory process in Marshall would be far less convenient and more expensive than compulsory process in Dallas, and therefore transfer to the Northern District of Texas is appropriate. *See Aetna Life Ins. Co. v. Methodist Hospitals of Dallas*, 2014 WL 297620, at *3 (S.D. Tex. Jan. 27, 2014). In *Aetna Life Insurance*, the court explained that this factor favored transfer where the defendants suggested they would call as witnesses a number of physicians whom were non-employee members of the medical staff at Defendant's hospitals and "all of the hospitals owned by the Defendants are in the Dallas-Fort Worth metropolitan area," because "it is likely that the [transferee] Northern District of Texas would have absolute subpoena power over all of Defendants' witnesses [and] . . . compulsory process in the [transferee] Northern District of Texas is likely to be more convenient." *Id.*, at *3 (citing *Ingeniador*, 2014 WL 105106, at *2). The case at hand is analogous. Notwithstanding that there are at least three key, non-party witnesses working at Zix's headquarters in Dallas over whom this Court may have compulsory power, the Northern District would have absolute compulsory power over all of the key Zix employees in Dallas. Furthermore, compulsory process would be far more convenient and less expensive in Dallas because those witnesses are already located in or are significantly closer to Dallas than Marshall. Therefore, for reasons similar to those in *Aetna Life Ins. Co.*, this factor weighs in favor of transfer.

### 3. The Cost of Attendance Factor Weighs in Favor of Transfer because the Transferee District Would be Cheaper for Both Parties' Witnesses

When the distance between the transferor and transferee venues is greater than 100 miles, the Fifth Circuit applies the "100-mile rule" to aid in determining the relative cost of attendance for each venue. *Volkswagen I*, 371 F.3d at 204-05. The 100-mile rule holds that once a 100-mile threshold is crossed, each additional mile between the existing and proposed venues "increases [the factor of inconvenience] in direct relationship to the additional distance to be traveled."[21] The court then compares the respective distances between the residences or workplaces of all the identified witnesses for the transferor and transferee venues and determinates which venue is more convenient.[22]

There are four primary areas from which witnesses could travel for this case: (1) Zix's employees working in Dallas, Texas; (2) Zix's employee in Ottawa, Ontario; (3) Comerica's employees in Auburn Hills, Michigan; and (4) the inventors and other witnesses from New Jersey. Every one of the identified witnesses from each area is outside of a hundred miles of Marshall. Due to flight schedules, every one of the identified witness from each area would have to travel over 100 miles further to Marshall than Dallas. Of course this is true for the Zix employees who work in Dallas, and it is true for all the witnesses outside the State of Texas because every flight to Longview, Texas stops in Dallas first. *See* Exh. O, ¶ 3. Thus, every witness would have to travel less if the case is tried in Dallas rather than Marshall. Likewise, for each of these witnesses, the flight into Dallas is cheaper than the flight into Longview.[23]

---

[21] *Id.* Notably, the 100-Mile Rule recognizes the indirect costs of additional travel distance. *Id.* As the Fifth Circuit rationalized, additional distance not only means additional travel time, but additional travel time also means more travel and lodging expenses and more overnight stays, which ultimately means that witnesses will face additional absences from their regular employment, community, and family. *Id.*; *Volkswagen II*, 545 F.3d at 317.
[22] *Lone Star Doc. Mgmt. v. Catalyst Repository Sys, Inc.*, 2013 WL 5496816, at *3 (E.D. Tex. Mar. 15, 2015).
[23] *See supra*, note 14.

### 4. The Other Practical Problems Factor is Either Neutral or Slightly Favors Transfer

"Practical problems include those that are rationally based on judicial economy." *Lone Star Document Management, LLC*, 2013 WL 5496816, at *4. This case is just beginning, so there are no prejudice, hardship, or administrative difficulties that would arise from transferring this case to the NDTX. Likewise, no discovery has taken place. Importantly, this Court's consolidation of the cases should not affect its analysis. *See GeoTag, Inc. v. Starbucks Corp.*, No. 2:10-cv-572, 2013 WL 890484, at *6 (E.D. Tex. Jan. 14, 2013) (permitting separately filed patent infringement cases to sway a venue transfer analysis would allow plaintiffs to "manipulate venue by serially filing cases within a single district" and "would undermine the principals underpinning transfer law"). Furthermore, Commerce Bank, one of the consolidated Defendants in this case, has or will file a Motion to Transfer Venue to the NDTX, Dallas Division. The issues in this case will overlap with and be very similar to those in Commerce's case because, as Commerce indicated in its Motion, it also uses Zix's secure email systems. Therefore, transferring this and Commerce's case to the NDTX together will promote judicial economy by keeping cases with overlapping issues together. Thus, this factor slightly favors transfer.

### D. The Public Interest Factors Favor Transfer

The four public interest factors that courts consider in determining whether the transferee forum is clearly more convenient are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of law or in the application of foreign law." *Volkswagen I*, 371 F.3d at 203.

13

### 1. The Court Congestion Factor is Neutral or Slightly Favors Transfer Because the Time to Trial is Shorter in the Transferee Venue

Notwithstanding that this factor is the most speculative and cannot alone outweigh the other factors, the time to trial is relevant under this factor of the transfer analysis. *West Coast Trends, Inc. v. Oigo Intern., Inc.*, 2011 WL 5117850, *4 (E.D. Tex. Oct. 27, 2011). The most recent statistics report that the median time interval to trial is 22.8 months in the NDTX.[24] The median time interval for the EDTX was slightly longer, at 26.1 months. *Id.* Therefore, litigants have the opportunity to have their disputes decided by a jury slightly faster in the NDTX than the EDTX. Thus, this factor is either neutral or slightly favors transfer.

### 2. The Local Interest Factor Strongly Favors Transfer Because the NDTX has a Strong Local Interest and Neither Party has Any Presence in the EDTX

"The Supreme Court has determined that '[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation.'" *Volkswagen I*, 371 F.3d at 206 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947)). This factor requires "consideration of those actually affected—directly and indirectly—by the controversies and events giving rise to a case." *Volkswagen II*, 545 F.3d at 318 (emphasis added). The local interest in the NDTX is strong because at the center of this action is the work and reputation of the Dallas company, Zix, and its employees that designed, implemented, and operate the allegedly infringing secure email system features.[25] The NDTX is the center of gravity of this litigation because the facts and events forming the basis of this suit, the design and development of Zix's system and its features, primarily occurred in the NDTX. On the other hand, neither the

---

[24] *See* Exh. L, FEDERAL JUDICIAL CASELOAD STATISTICS, U.S. DISTRICT COURTS, Table C-5 (Mar. 31, 2014).
[25] Zix Corporation is very active in the local Dallas community. Two years ago, Zix answered the Dallas mayor's call for businesses to participate in the "Intern Fellows Program," which helps students from Dallas's public high schools make the connection between a good education and a great career. *See* Exh. M. Focus Daily News, *Dallas Mayor Kicks Off Internship Program for Public School Students with Work Experience* (2013).

parties nor Zix have pertinent employees, offices, or documents near this Court. Even DataMotion Texas, LLC's recently-purchased resident agent—its only connection to the State of Texas—is located in Austin, Texas, about 250 miles away from this Court in the Western District of Texas. Finding that the residents of EDTX have an interest in this case because the accused system can be used in the EDTX as DataMotion Texas, LLC contends would be akin to the rationale the Court in *Volkswagen II* rejected. *Volkswagen II*, 545 F.3d at 318 (stating that reasoning of that type "stretches logic in a manner that eviscerates the public interest that this factor attempts to capture").

### 3. The Familiarity with the Governing Law and Conflicts of Laws Regarding the Application of Foreign Law Factors are Neutral

The two remaining factors regarding the familiarity of the forum with the governing law and the avoidance of foreign conflict of law issues are neutral because both courts are familiar with federal patent law and there are no foreign conflicts of law issues to avoid.

### III. CONCLUSION

This case presents the situation where most witnesses and evidence are closer to and more convenient from the transferee forum and few or no convenience factors favor the transferor forum. Accordingly, Comerica respectfully requests that this Court transfer this case to the Northern District of Texas.

Dated: October 14, 2015                                     Respectfully submitted:


                                                            */s/ Melissa R. Smith*
                                                            Melissa R. Smith
                                                            State Bar No. 24001351
                                                            GILLAM & SMITH, LLP
                                                            303 South Washington Avenue
                                                            Marshall, Texas 75670
                                                            Telephone:  (903) 934-8450
                                                            Facsimile:  (903) 934-9257
                                                            Email:
                                                            melissa@gillamsmithlaw.com

                                                            Luke Pedersen
                                                            Texas Bar No. 24002742
                                                            BAKER BOTTS, L.L.P.
                                                            The Warner
                                                            1299 Pennsylvania Avenue, NW
                                                            Washington, DC 20004
                                                            Tel: 202.639.7700
                                                            Fax: 202.639.7890
                                                            luke.pedersen@bakerbotts.com


                                                            ***ATTORNEYS FOR
                                                            DEFENDANTS COMERICA
                                                            BANK, COMERICA
                                                            INCORPORATED, and
                                                            COMERICA BANK & TRUST,
                                                            N.A.***

16

**CERTIFICATE OF CONFERENCE**

I hereby certify that on October 14, 2015, I conferred by phone with counsel for Plaintiffs, pursuant to Local Rule CV-7(h) in a good faith effort to resolve the items presented to the Court in Defendants Comerica Bank, Comerica Incorporated, and Comerica Bank & Trust, N.A.'s Motion to Transfer Venue. The parties disagreed as to the venue of the case. Counsel for Plaintiffs indicated that Plaintiffs would oppose this motion. The discussions have conclusively ended in an impasse, making the issue of venue as presented in Defendants Comerica Bank, Comerica Incorporated, and Comerica Bank & Trust, N.A.'s Motion to Transfer Venue ripe for the Court to resolve.

/s/Melissa R. Smith

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this 14th day of October, 2015, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3). Any other counsel of record will be served by a facsimile transmission and/or first class mail on this same date.

/s/ Melissa R. Smith
Melissa R. Smith